**COMMUNITY BANK, FSB, Plaintiff,**

v.

**STEVENS FINANCIAL CORPORATION and Creig Stevens, Defendants.**

**HOMESIDE LENDING, INCORPORATED a Florida Corporation f/k/a BancBoston Mortgage Corporation, Intervenor Plaintiff,**

v.

**COMMUNITY BANK, FSB, an Indiana Federal Savings Bank, and Stevens Financial Corporation, a California Corporation, Intervenor Defendants.**

No. 3:96–cv–0267 AS.

United States District Court,
N.D. Indiana,
South Bend Division.

June 2, 1997.

Lewis C. Laderer, Jr., Rebecca H. Fischer, South Bend, IN, for Community Bank, FSB.

Douglas J. Hannoy, Feiwell and Hannoy, Indianapolis, IN, for Stevens Financial Corp. and Creig Stevens.

Raymond J. Kelly, Jr., Alexander S. Vesselinovitch, Seyfarth Shaw Fairweather and Geraldson, Chicago, IL, for HomeSide Lending, Inc.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

This cause is before the court on intervenor defendant Community Bank's motion for summary judgment, filed January 31, 1997. In this motion, Community Bank ("Community Bank" or "Community") seeks summary judgment on the state law unjust enrichment claim presented by HomeSide Lending Company ("HomeSide")[1] in its Intervenor Complaint, filed November 20, 1996.

## I. FACTUAL BACKGROUND

This cause arises out of a wire transfer of funds by HomeSide to Community Bank for the benefit of Stevens Financial Corporation ("Stevens Financial" or "Stevens"). The uncontroverted facts surrounding that wire transfer are as follows. HomeSide and Stevens Financial were parties to a Correspondent Loan Purchase Agreement ("Agreement"), whereby HomeSide periodically purchased mortgages from Stevens Financial. As part of this ongoing Agreement, HomeSide agreed to purchase a certain first mortgage on residential property in California from Stevens Financial. The mortgagors of this loan were Mr. and Mrs. John Yun ("Yun") and the mortgage was in the amount of $489,466.84. Pursuant to the Agreement, when HomeSide would purchase a mortgage from Stevens Financial, HomeSide would transfer the proceeds to Stevens Financial's designated warehouse lender—Community Bank—where Stevens Financial held an account.

On or about March 20, 1996, HomeSide received amended instructions from Stevens Financial to wire the purchase proceeds for the Yun mortgage to a different warehouse lender—Chase Manhattan Bank of New York ("Chase Manhattan"). Subsequently, on March 28, 1996, in order to finalize the purchase of the Yun mortgage, HomeSide wired funds in the amount of $489,466.84, by mistake, to Community Bank, directing Community to credit Stevens Financial's account, Community Bank account number 57–1022755.

Community Bank received the wire transfer in the amount of $489,466.84 from HomeSide on March 29, 1996. The wire transfer was for the credit of Priority BanCorp, Inc. ("Priority"), for the further credit of Stevens Financial. Community Bank accepted the payment order and credited Stevens Financial's account. On that date, Stevens Financial was in default on a prior commercial promissory note executed and delivered by Stevens Financial to Community Bank on or about October 18, 1995 (the "1995 Note"). The original principal amount of the 1995 Note was $118,331.82. Subsequently, on April 1, 1996, Community Bank set off $125,274.59 of the funds credited to Stevens Financial's account in order to square the obligations Stevens Financial owed to Community Bank pursuant to the 1995 Note.[2]

On April 3, 1996, HomeSide informed Stevens Financial by letter that it had mistakenly transferred funds in the amount of $489,466.84 to Community Bank rather than Chase Manhattan, as had been requested by Stevens. Also on April 3, HomeSide sent an additional payment of $489,466.84, by wire, to Chase Manhattan for Steven Financial's benefit. The next day, HomeSide informed Community Bank by letter that the March 28 wire transfer was sent in error. Consequently, HomeSide requested Community

1. At all times relevant to the Intervenor Complaint, HomeSide, a Florida Corporation, was doing business as BancBoston Mortgage Corporation. However, in the interests of convenience, the court will refer to HomeSide as the party sending the wire transfer throughout this memorandum and order.

2. The amount set off by Community Bank—$125,274.59—included the original principal amount of the Note—$118,331.82, plus interest of $3,513.77, late charges of $54.00, and attorneys fees and court costs of $3,375.00.

Bank to cancel the transfer and wire the total amount of the funds from the March 28 transfer to HomeSide's account at Chemical Bank of New York ("Chemical Bank"). Community Bank responded by wiring the amount of $364,192.25 to Chemical Bank for deposit into HomeSide's account, withholding the $125,274.59 that Community set off from Stevens Financial's account. Subsequently, HomeSide repeated its demands, orally and in writing, for return of the whole amount of the initial wire transfer. However, Community Bank refused to return the funds it had set off pursuant to Stevens' obligations on the 1995 Note.

## II. PROCEDURAL BACKGROUND

This cause was originally filed by Community Bank against Stevens Financial and Creig Stevens[3] in LaPorte County Circuit Court on March 4, 1996. Thereafter, on April 19, 1996, the defendants, by counsel, filed a notice of removal from state court, asserting federal diversity jurisdiction pursuant to 28 U.S.C. § 1332. On July 2, 1996, HomeSide filed a motion to intervene and its Intervenor Complaint. Community Bank filed an objection to HomeSide's motion to intervene on July 24, 1996.

On October 29, 1996, this court granted HomeSide's motion to intervene, finding permissive intervention appropriate under Rule 24(b)(2) of the Federal Rules of Civil Procedure.[4] Accordingly, the clerk of this court filed HomeSide's Intervenor Complaint, with jury demand, on November 20, 1996. In this complaint, HomeSide raises two counts—one count of unjust enrichment against Community Bank and one count of unjust enrichment against Stevens Financial. On December 6, 1996, intervenor defendant Community Bank filed its answer to HomeSide's complaint. However, intervenor defendant Stevens Financial failed to answer the complaint. Consequently, on February 6, 1997, the clerk of this court made an entry of default against Stevens Financial. Also that

day, HomeSide filed a motion for default judgment against Stevens Financial, which this court granted on February 11, 1997. As a result, under Rule 55 of the Federal Rules of Civil Procedure, HomeSide was awarded a judgment against Stevens Financial in the amount of $125,274.59, plus interest of 5.64%.

Meanwhile, on January 31, 1997, intervenor defendant Community Bank filed ·the motion for summary judgment now before the court. In this motion, Community Bank argues that it properly set off the funds it received from HomeSide for Stevens Financial's benefit on March 29, 1996, and, thus, that HomeSide is not entitled to return of those funds under Article 4A of the Uniform Commercial Code ("U.C.C."). HomeSide filed its response in opposition to Community Bank's summary judgment motion on March 7, 1997. In its response, HomeSide argues that the 1995 Note held by Community Bank specifically prohibited Community's set off of the finds received from HomeSide for Stevens Financial's benefit because those funds were sent to Community in error. Thus, HomeSide argues that it still owned the funds at the time of the set off. In addition, HomeSide asserts that Community Bank's acceptance of the unauthorized payment order from HomeSide was nullified under the U.C.C. and, as a result, Community Bank had no right to set off the funds received against Stevens Financial's prior debt. At the very least, HomeSide contends that a genuine issue of material fact exists as to the ownership of the erroneously transferred funds, thus, precluding summary judgment in this case.

Community Bank filed a reply to HomeSide's response on March 18, 1997. In its reply, Community Bank argues that no genuine issues of material fact exist in this case. In addition, the intervenor defendant submits that its promissory note with Stevens Financial did not prohibit the set off of funds credited to Stevens' account. Further, Community Bank contends that HomeSide's pay-

---

3. Creig Stevens was named individually as a defendant in the Original Complaint because he signed as a guarantor for Stevens Financial on the 1995 Note held by Community Bank.

4. In the October 29, 1996, memorandum and order, this court also found that the Original and Intervenor Complaints were both properly before this court pursuant to its federal diversity jurisdiction under 28 U.S.C. § 1332.

ment order to Community was an authorized payment order which was properly accepted. Thus, Community Bank argues that the payment order could not be canceled or amended by HomeSide without Community's agreement or consent. As a result, Community Bank submits that the set off of Stevens Financial's funds was proper under § 26-1-4.1-502 of the Indiana Code, and, thus, that it is entitled to summary judgment in this case.

## III. SUMMARY JUDGMENT STANDARD

The intervenor defendant, Community Bank, has filed its motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56; *Russo v. Health, Welfare & Pension Fund, Local 705*, 984 F.2d 762 (7th Cir.1993). A thorough discussion of Rule 56 can be found in a trilogy of cases decided in 1986 by the Supreme Court of the United States. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *Celotex* addressed the initial burdens of the parties under Rule 56, and *Anderson* addressed the standards under which the record is to be analyzed within the structure of Rule 56.

The initial burden is on the moving party to demonstrate, with or without supporting affidavits, the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. A question of material fact is a question which will be outcome determinative of an issue in the case. The Supreme Court has instructed that the facts which are material in a specific case shall be determined by the substantive law controlling the given case

or issue. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine [material] issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Rule 56; alteration added). The nonmoving party may not rest on its pleadings, *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920–21 (7th Cir.1994); *Hughes v. Joliet Correctional Ctr.*, 931 F.2d 425, 428 (7th Cir.1991); nor may the party resisting summary judgment rely upon conclusory allegations in affidavits. *Cusson–Cobb v. O'Lessker*, 953 F.2d 1079, 1081 (7th Cir.1992).

During its summary judgment analysis, the court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Smith v. Fruin*, 28 F.3d 646, 650 (7th Cir.1994), *cert. denied*, 513 U.S. 1083, 115 S.Ct. 735, 130 L.Ed.2d 638 (1995); *Brennan v. Daley*, 929 F.2d 346, 348 (7th Cir.1991). Furthermore, the court is required to analyze summary judgment motions under the standard of proof relevant to the case or issue. *Anderson*, 477 U.S. at 252–55, 106 S.Ct. at 2512–14.

Although the Supreme Court later revisited the 1986 trilogy in *Eastman Kodak v. Image Technical Servs.*, 504 U.S. 451, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992), a case born in the context of antitrust law, the most that can be said for *Eastman Kodak* is that it did not tinker with *Celotex* and *Anderson*, and possibly involved an attempt to clarify *Matsushita*. This view is well-supported by an in-depth academic analysis in Schwarzer, Hirsch, and Barrans, *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441 (1992).

## IV. APPLICABILITY OF ARTICLE 4A OF THE UNIFORM COMMERCIAL CODE

This cause of action presents several questions involving the ownership of money transferred electronically by wire from HomeSide to Community Bank for Stevens Financial's benefit on March 28, 1996. HomeSide, the intervenor plaintiff, raises a state common

law claim of unjust enrichment against Community Bank, alleging that Community wrongfully set off funds received for Stevens Financial's benefit. Community Bank argues that HomeSide's state law claim is preempted and controlled by Federal Reserve Board Regulation J, 55 Fed.Reg. 40,-791 (1990) (as amended Oct. 5, 1990) (codified at 12 C.F.R. Part 210 (Subpart B and Appendix B)).

█ It appears to be undisputed that the wire transaction at issue was sent via the Federal Reserve Wire Transfer Network ("Fedwire"), owned an operated by the Federal Reserve Bank. Since the wire transfer at issue was sent through Fedwire, the provisions of Regulation J are applicable to this case. *See Donmar Enters., Inc. v. Southern Nat'l Bank of North Carolina*, 64 F.3d 944, 949 (4th Cir.1995). As of January 1, 1991, the Federal Reserve Board revised Subpart B of Regulation J to apply the provisions of U.C.C. Article 4A to funds transfers handled by Federal Reserve banks. *Id.* at 948.[5] Accordingly, it is this court's view that Article 4A of the U.C.C. governs the electronic wire transfer at issue. *See General Elec. Capital Corp. v. Central Bank*, 49 F.3d 280, 282 (7th Cir.1995). However, this court may resort to principles of law or equity outside of Article 4A so long as these principles do not create rights, duties and liabilities inconsistent with those stated in Article 4A. *See Centre–Point Merchant Bank Ltd. v. American Express Bank Ltd.*, 913 F.Supp. 202, 206 (S.D.N.Y. 1996).

The Official Commentary of the U.C.C. § 4A–101 provides insight into the objectives of the Federal Reserve Board in adopting Article 4A to govern transactions involving Fedwire:

Before this Article was drafted there was no comprehensive body of law—statutory or judicial—that defined the judicial nature of a funds transfer or the rights and obligations flowing from payment orders. Judicial authority with respect to funds transfers is sparse, undeveloped and not uniform. Judges have had to resolve disputes by referring to general principles of common law or equity ... [b]ut attempts to define rights and obligations in funds transfers by general principles or by analogy to rights and obligations in negotiable instrument law or the law of check collection have not been satisfactory.... The rules that emerged represent a careful and delicate balancing of those interests and are intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the Article. Consequently, resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in this Article.

Article 4A of the U.C.C. has been adopted by the State of Indiana, and is codified as Chapter 4.1 of the Indiana Uniform Commercial Code. *See* IND.CODE §§ 26–1–4.1–101 *et seq.*[6] Accordingly, this court must look to the U.C.C., as codified by the State of Indiana, to address the arguments presented by HomeSide and Community Bank on this motion for summary judgment.

## V. DISCUSSION

The questions presented in this motion for summary judgment are issues of first impression in this court, if not this circuit. In its motion for summary judgment, Community Bank presents a three-pronged argument in support of its contention that it properly set off a portion of the funds wired by HomeSide for the benefit of Stevens Financial on March 28, 1996. First, Community Bank asserts that the wire transfer sent by HomeSide was an authorized payment order that it properly accepted and credited to Stevens Financial's account. Thus, Community Bank

---

**5.** The district court in *Donmar Enters., Inc.* found that Regulation J furnishes private plaintiffs a cause of action against banks participating in the Fedwire system. *See Donmar Enterprises, Inc. v. Southern Nat'l Bank of North Carolina*, 828 F.Supp. 1230, 1234 (W.D.N.C.1993), *aff'd*, 64 F.3d 944 (4th Cir.1995).

**6.** It appears undisputed that Indiana law controls in this case. Therefore, in analyzing the arguments presented, the court will apply the U.C.C. as codified by the State of Indiana.

argues that at the moment the payment order was accepted and the funds credited, the funds transferred were owned solely by Stevens Financial. Once the funds were under the control of Stevens Financial, Community Bank submits that it properly set off $125,-274.59 of the funds credited to satisfy the debt Stevens Financial owed Community under the 1995 Note. In addition, Community Bank asserts that HomeSide's attempt to cancel the payment order was nullified by the fact that Community had already accepted the payment order prior to receiving notice of the error. Thus, under the U.C.C., Community Bank argues that it does not have an affirmative duty to return all of the funds. Therefore, Community Bank argues that the set off of the funds in Stevens Financial's account was proper and, as a result, this court should grant its request for judgment as a matter of law on HomeSide's unjust enrichment claim.

HomeSide sets forth its own three-pronged argument in response to the motion for summary judgment. First, HomeSide contends that the payment order sent to Community Bank on March 28, 1996, was an erroneous transfer, constituting an unauthorized payment order under the U.C.C. HomeSide asserts that Stevens Financial had changed its standing instructions for payment under the Loan Agreement. Thus, HomeSide submits that it was only "authorized" to wire the funds for the Yun mortgage to Stevens' account at Chase Manhattan. Under a strict reading of the U.C.C., HomeSide argues that its transfer of the funds to Community Bank was unauthorized and, consequently, that Community Bank is required to refund the entire amount of the transfer since Home-Side timely notified Community that the transfer was made in error. HomeSide submits that Community Bank could not properly accept the payment order because Home-Side never had relinquished ownership of the funds transferred. Consequently, HomeSide concludes that Community Bank's set off of the funds received from the transfer was improper since HomeSide retained control over the funds. As a result, HomeSide requests that this court deny Community Bank's motion for summary judgment on its merits or, in the alternative, find that a genuine issue of material fact exists on the issue of ownership, precluding summary judgment.

After carefully reviewing the record in its totality, the court finds that there exist no questions of material fact that would preclude summary judgment in this case. Thus, in order to determine whether the intervenor defendant is entitled to judgment as a matter of law in this case, the court must address four separate issues of law. First, the court must determine whether the wire transfer sent by HomeSide to Community Bank was an authorized payment order under the U.C.C. Second, if the payment order was authorized, then the court must address which party owned the funds prior to the time the set off occurred. Third, this court must also address whether HomeSide's attempt to cancel or amend the March 28, 1996, wire transfer was binding on Community Bank under the U.C.C. Fourth, this court must also determine whether Community Bank's set off of the funds was appropriate under the applicable law. If all of these questions are answered in Community Bank's favor, then Community will be entitled to summary judgment on HomeSide's unjust enrichment claim.

## A. WAS THE WIRE TRANSFER A PAYMENT ORDER

■ The first issue that this court must address is whether the transaction at issue qualifies as a "payment order" under Article 4A of the U.C.C. In addressing this issue, the court believes it is necessary first to address the roles the parties played in the wire transfer. The Official Commentary to § 26–1–4.1–104 of the Indiana Code provides a worthwhile statement on the definitions of the parties to a wire transfer:

Article 4A governs a method of payment in which the person making payment (the "originator") directly transmits an instruction to a bank either to make payment to the person receiving payment (the "beneficiary") or to instruct some other bank to make payment to the beneficiary. The payment from the originator to the beneficiary occurs when the bank that is to pay the beneficiary becomes obligated to pay the beneficiary.

*See* Ind.Code § 26–1–4.1–104, Official Comment 1.

The transfer at issue in this case was initiated by HomeSide, with HomeSide being the party owing the obligation to Stevens Financial in exchange for the rights to the Yun mortgage. HomeSide sent the payment order instructing the "receiving bank" to credit Stevens Financial's account. Thus, for purposes of Article 4A, it is this court's opinion that HomeSide was the "originator" of the transaction as well as the "originating bank." The transaction instructed the receiving bank—here, Community Bank—to credit the bank account of the "beneficiary"—Stevens Financial—at Community in the amount of the transfer—$489,466.84. As a result, in this court's view, Community Bank acted as both the "receiving bank" and "beneficiary's bank," with Stevens Financial fulfilling the role of "beneficiary" for purposes of Article 4A.

Having addressed the roles played by the parties to the transaction at issue, it is now necessary for the court to determine whether the transfer sent by HomeSide to Community Bank qualifies as a payment order under the U.C.C. Section 26–1–4.1–103 of the Indiana Uniform Commercial Code defines what must be present for a transaction to be considered a payment order:

> "Payment order" means an instruction of a sender to a receiving bank, transmitted orally, electronically, or in writing, to pay, or to cause another bank to pay, a fixed or determinable amount of money to a beneficiary if:
>
> (i) the instruction does not state a condition to payment to the beneficiary other than time of payment;
>
> (ii) the receiving bank is to be reimbursed by debiting an account of, or otherwise receiving payment from, the sender; and
>
> (iii) the instruction is transmitted by the sender directly to the receiving bank or to an agent, funds-transfer system, or communication system for transmittal to the receiving bank.

*See* Ind.Code § 26–1–4.1–103(1).

In this case, HomeSide instructed Community Bank, the receiving bank, to credit Ste-vens Financial's account at Community in the amount of $489,466.84. *See* Affidavit of James D. Neff, Ex. A. According to the record, the order from HomeSide did not contain any conditions to Community Bank's crediting of Stevens Financial's account. In addition, it appears to be undisputed that the order was sent from HomeSide, through Priority, an intermediary bank, and then to Community Bank via Fedwire, a funds transfer system. Therefore, this court finds that the transfer sent by HomeSide to Community Bank qualifies as a "payment order" under § 4.1–103(1).

## B. WAS THE PAYMENT ORDER AUTHORIZED

The next issue that this court must address is whether the payment order at issue qualifies as an *authorized* payment order under the U.C.C. HomeSide submits that its March 28, 1996, payment order to Community Bank was an unauthorized payment order. Specifically, HomeSide Submits that Stevens Financial had amended its payment instructions from the designation made in their Loan Agreement, setting forth a different warehouse lender—Chase Manhattan—to which HomeSide was to wire the funds for the Yun mortgage. Community Bank counters by arguing that under a strict interpretation of § 26–1–4.1–202 of the Indiana Code, the payment order sent by HomeSide was an authorized payment order.

Section 4.1–202 defines and explains what payment orders are to be classified as authorized payment orders, providing in relevant part:

> (a) A payment order received by the receiving bank is the authorized order of the person identified as sender if that person authorized the order or is otherwise bound by it under the law of agency.

In this case, HomeSide appears to confuse its role in the transaction. According to the record, the wire transfer at issue originated from HomeSide and was sent to Community Bank, instructing Community to credit Ste-vens Financial's account at Community in the amount of $489,466.84. As a result, as set forth above, HomeSide qualifies as the send-

er or originator of the payment order. Thus, the relevant issue is whether HomeSide authorized the payment order, not whether HomeSide properly followed the instructions of the beneficiary—Stevens Financial.

According to § 4.1–202(a), the sender is the party which authorizes the payment order. To follow HomeSide's argument, the payment order received by Community Bank for Stevens Financial's benefit was unauthorized by Stevens. Consequently, following HomeSide's argument, Stevens Financial was both the originator and the beneficiary of the payment order—a conclusion that does not logically follow from the record.[7]

In this case, HomeSide was transferring $489,466.84 to Stevens Financial in return for the Yun mortgage. Thus, the only logical conclusion is that HomeSide was the originator or sender of the payment order, not Stevens Financial. Since Stevens Financial was merely the beneficiary of the payment order and not its originator, the fact that Stevens instructed HomeSide to wire the funds to a receiving bank other than Community Bank is irrelevant to the question of whether the payment order was authorized under § 4.1–202(a). Thus, in this court's opinion, Stevens Financial was not in a position, as beneficiary, to authorize the payment order. Rather, according to the record, the payment order was sent by HomeSide and clearly identified Community Bank by name as the receiving bank. Therefore, the court finds that the payment order sent by HomeSide to Community Bank, in the amount of $489,466.84, was an authorized payment order under § 4.1–202(a) of the Indiana Uniform Commercial Code.

## C. ATTEMPT TO CANCEL OR AMEND THE TRANSFER AND OWNERSHIP OF THE FUNDS

HomeSide argues that it retained ownership of the funds after the payment order was received by Community Bank because the payment order was erroneous under § 26–1–4.1–205 of the Indiana Code. Thus, since the payment order was transferred in error, HomeSide claims that the notice it sent to Community Bank on April 4, 1996, effectively served to cancel or amend the payment order pursuant to IND. CODE § 26–1–4.1–211. Therefore, HomeSide contends that it still has ownership rights to the funds sent to Community Bank and, as a result, Community has been unjustly enriched and should be required to return the whole amount of the $489,466.84 transfer.

Community Bank argues that it properly accepted the authorized payment order prior to receiving notice of the error from HomeSide. Thus, after the funds were credited to Stevens Financial's account at Community Bank, Community argues that Stevens Financial had ownership rights to the funds. Therefore, when it subsequently received HomeSide's notice of the error, Community Bank argues that, after the set off, it possessed ownership rights to the funds. As a result, Community Bank submits it should not be required to repay the whole amount of the transfer pursuant to § 4.1–205, since HomeSide's attempt to cancel the payment order is not binding under Article 4A.

Having determined above that the payment order at issue was an authorized payment order, the court must now determine which party had ownership rights to the funds at the time Community Bank received notice from HomeSide that the funds were mistakenly sent to Community. After determining ownership rights, the court must then address what effect HomeSide's attempt to cancel the transaction had on the ownership of the funds.

A review of the uncontroverted facts establishes the following chronology of events. First, a payment order was sent by HomeSide to Community Bank for Stevens Finan-

---

7. The court acknowledges that is possible for a party to be both the originator of a payment order and the beneficiary. In such a situation, for example, the originator would authorize the originating bank to transfer funds from Account A to Account B. However, in that scenario, the originator would own both Accounts A and B. According to the record in this case, such a transaction clearly did not occur. Rather, HomeSide transferred funds to Community Bank for Stevens Financial's benefit in exchange for Stevens' rights to the Yun mortgage. Thus, HomeSide was the sender or originator of the order, while Stevens Financial acted solely as the beneficiary.

cial's benefit on March 28, 1996. Next, Community Bank received the payment order from HomeSide and credited Stevens Financial's account on March 29, 1996. Subsequently, on April 3, 1996, HomeSide sent a notice to Stevens Financial that it had sent the funds for the Yun mortgage in error to Stevens' account at Community Bank. Also that day, HomeSide sent a second transfer of $489,466.84, for Stevens Financial's benefit, to Chase Manhattan in order to adhere to Stevens' amended instructions. Then, on April 4, 1996, HomeSide informed Community Bank by letter that the March 28 payment order was erroneous and, consequently, HomeSide requested that the payment order be amended or canceled.

Section 26–1–4.1–209 of the Indiana Code sets forth the standards for proper acceptance of a payment order, providing in relevant part:

> ... a beneficiary's bank accepts a payment order at the earliest of the following times:
>
> (1) when the bank: (i) pays the beneficiary as stated in IC 26–1–4.1–405(a) or IC 26–1–4.1–405(b); or (ii) notifies the beneficiary of receipt of the order or that the account of the beneficiary has been credited with respect to the order unless the notice indicates that the bank is rejecting the order or that funds with respect to the order may not be withdrawn or used until receipt of payment from the sender of the order;
>
> (2) when the bank receives payment of the entire amount of the sender's order pursuant to IC 26–1–4.1–403(a)(1) or IC 26–1–4.1–403(a)(2); or
>
> (3) the opening of the next funds transfer business day of the bank following the payment date of the order ...

See IND.CODE § 26–1–4.1–209(b).

It appears that HomeSide's argument for ownership hinges upon its assertion that the payment order was unauthorized at its origination. HomeSide claims that its notice of error sent to Community Bank on April 4, 1996, was sufficient to cancel or amend the payment order and, following § 4.1–211, Community's acceptance of the unauthorized payment order was nullified. Community Bank counters by asserting that it properly accepted the payment order when it credited Stevens Financial's account. Thus, after the funds were credited to Stevens' account and, subsequently, set off against Stevens' preexisting debt, Community Bank contends that it possessed ownership rights to the funds.

According to the record, Community Bank's argument has merit. It is undisputed that Community Bank received the entire amount of HomeSide's payment order—$489,466.84—on March 29, 1996. Thus, under § 4.1–209(b)(1)(ii), Community Bank accepted the payment order on March 29, when it credited Stevens Financial's account for the full amount of the transfer.

After Community Bank accepted the payment order, HomeSide contends that it properly canceled the order, informing Stevens Financial and Community Bank by mail on April 3 and 4, 1996, respectively, that the order was erroneously sent to Community. HomeSide relies on §§ 4.1–211(c)(2) and (e) in support of its argument that the payment order was properly canceled.[8] However, the court finds HomeSide's argument to be misplaced because §§ 4.1–211(c) and (e) deal

---

8. Section 26–1–4.1–211(c)(2) of the Indiana Code reads:

(c) After a payment order has been accepted, cancellation or amendment of the order is not effective unless the receiving bank agrees or a funds-transfer system rule allows cancellation or amendment without agreement of the bank.

(2) With respect to a payment order accepted by the beneficiary's bank, cancellation or amendment is not effective unless the order was issued in execution of an unauthorized payment order, or because of a mistake by a sender in the funds transfer which resulted in the issuance of a payment order:

(i) that is a duplicate of a payment order previously issued by the sender;

(ii) that orders payment to a beneficiary not entitled to receive payment from the originator; or

(iii) that orders payment in an amount greater than the amount the beneficiary was entitled to receive from the originator. If the payment order is canceled or amended, the beneficiary's bank is entitled to recover from the beneficiary any amount paid to the beneficiary to the extent allowed by the law governing mistake and restitution.

with situations very different from the circumstances at issue here.[9] Moreover, it is this court's view that HomeSide's argument is wholly dependent upon a finding that the payment order at issue was an *unauthorized* payment order—an assertion that this court above rejects.

■ However, assuming arguendo that the payment order was unauthorized, HomeSide's reliance on § 4.1–211(c) is still without merit. Section 4.1–211(c)(2) limits cancellation of an unauthorized or mistaken payment order that has been properly accepted by the beneficiary's bank to three situations: (i) when the payment order is a duplicate of an order *previously* issued by the sender; (ii) when the sender orders payment to a beneficiary not entitled to receive payment from the originator; and (iii) when the sender orders payment in an amount greater than the amount the beneficiary was entitled to receive.

It appears that HomeSide rests its argument on the second scenario—that the payment order to Community Bank was a duplicate order. However, a review of the record elicits that neither of the three situations set forth in § 4.1–211(c)(2) is present in this case. On the second scenario, the payment order from HomeSide to Community Bank does not qualify because the order was clearly sent for Stevens Financial's benefit and Stevens was the only beneficiary entitled to receive the payment. In addition, the payment order at issue clearly does not fit the third situation because the order sent was not greater than the amount Stevens Financial was entitled to receive in exchange for the Yun mortgage.

Thus, HomeSide's argument appears to be limited to the first scenario—that the payment order to Community Bank was a duplicate transfer. However, it is this court's opinion that such a contention does not have merit. The payment order to Community Bank was the first payment order sent by HomeSide to satisfy its obligations on the Yun mortgage deal. HomeSide did not send its second payment order to Chase Manhattan until April 3, 1996—at least three days after the payment order at issue was sent. Thus, since the two payment orders were sent days apart, this court finds that they cannot be deemed duplicate orders under § 4.1–211.[10] In this court's view, HomeSide's attempt to cancel or amend the payment order sent to Community Bank was merely an attempt to cover for its own mistake in sending the payment for Stevens Financial's benefit to the wrong warehouse lender— Community. Thus, in this case, the court finds that the record is devoid of any evidence that the March 28 payment order was a duplicate transfer.

When all is said and done in this case, HomeSide's error in transmitting the payment order to Community Bank does not equate to sending a payment order to an unintended beneficiary or to transmitting a duplicate transfer. Rather, the payment order at issue was merely sent to the wrong *beneficiary's bank.* Thus, since HomeSide's payment order was accepted by Community Bank prior to the cancellation notice and since the payment order does not fit into any of the three statutory scenarios set forth in § 4.1–21 1(c)(2), HomeSide's cancellation was not effective under the U.C.C. even if the

---

9. Section 26–1–4.1–211(e) of the Indiana Code states:

(e) A canceled payment order cannot be accepted. If an accepted payment order is canceled, the acceptance is nullified and no person has any right or obligation based upon the acceptance. Amendment of a payment order is deemed to be a cancellation of the original order at the time of amendment and issue of a new payment order in the amended form at the same time.

10. The drafters of the U.C.C. envisioned the scenario of an erroneous duplicate order to be when the sender mistakenly transmits the same payment order multiple times. *See* Ind.Code § 26–1–

4.1–211, Official Comment 1. In that scenario, the duplicate payment order is sent at the same time or after the intended payment order. HomeSide argues that the payment order sent to Community Bank on March 28, 1996, was actually a "duplicate" of the payment order sent to Chase Manhattan days later. However, § 4.1–211(c)(2)(i) specifically states that cancellation is possible only on a duplicate payment order that is *previously* issued by the sender. Since HomeSide's payment order to Community Bank was sent *before* the "corrected" transfer to Chase Manhattan, the plain language of § 4.1–211(c)(2)(i) appears to nullify HomeSide's argument.

payment order is found to have been unauthorized.

The proper analysis on the issue of cancellation falls under the main language of § 4.1–211(c). Pursuant to that section, the cancellation or amendment of a payment order accepted by the receiving bank is not effective unless the receiving bank *agrees* to the cancellation or amendment, or a federal regulation allows cancellation or amendment without agreement by the bank. In this case, as set forth above, the payment order was authorized by HomeSide and properly accepted by Community Bank prior to Community's receipt of HomeSide's notice of error sent on April 4, 1996. Thus, HomeSide's attempt to cancel or amend the payment order is not effective unless Community Bank, the receiving bank, agrees to the change—something Community is not required to do regardless of the circumstances. *See* IND.CODE § 26–1–4.1–211, Official Comment 5.[11]

■ With regard to the issue of the ownership of the funds prior to the set off, the court looks to the decisions of other federal courts that have addressed similar issues. In *United States v. BCCI Holdings (Luxembourg)*, 956 F.Supp. 5 (D.D.C.1997), Judge Green of the District of Columbia held that under U.C.C. § 4A–404, the ownership interest in funds transferred by a payment order passes from the originator to the beneficiary's bank upon completion of the transfer and acceptance by the receiving bank. 956 F.Supp. at 11. In addition, in *Shawmut Worcester County Bank v. First American Bank & Trust*, 731 F.Supp. 57 (D.Mass.1990), Judge Young of the District of Massachusetts held that the completion of a wire transfer extinguishes the originator's ownership interest in the funds. 731 F.Supp. at 60.

Applying the holdings in *BCCI* and *Shawmut* to this case, Community Bank gained ownership rights to the funds transferred upon acceptance of the March 28 payment order and the subsequent crediting of Stevens Financial's account. Accordingly, since Community Bank has chosen not to agree to the cancellation or amendment of the payment order sent by HomeSide on March 28, 1996, Community Bank possessed ownership rights to the funds after they were credited to Stevens Financial's account. Thus, this court finds as a matter of law that HomeSide's attempt to cancel or amend the payment order was not binding under § 4.1–211(c).

### D. SET OFF OF THE FUNDS BY COMMUNITY BANK

■ The sole remaining legal issue to be addressed is whether Community Bank's set off of the funds in Stevens Financial's account was proper under the U.C.C. Community Bank submits that it properly set off the funds pursuant to § 26–1–4.1–502(c) of the Indiana Code. Specifically, Community Bank contends that Stevens Financial had defaulted on the 1995 Note. Consequently, when Community Bank accepted the $489,466.84 payment order from HomeSide for Stevens Financial's benefit, Community asserts that it credited Stevens' account for the full amount of the transfer. However, since Stevens Financial's account was in default due to the 1995 Note, Community argues that it had a right to set off the funds under § 4.1–502(c).

HomeSide counters by arguing that Community Bank's set off of the funds is subject to certain legal and equitable limitations that are supplemental to the U.C.C.[12] Specifically, HomeSide argues that "unless displaced by

---

**11.** In this case, it is undisputed that Community Bank agreed to return a portion of the $489,-466.84 transferred. Community Bank retained only the amount of the transfer that it had set off from Stevens Financial's account pursuant to the debt owed by Stevens on the 1995 Note.

**12.** HomeSide's first argument against Community Bank's set off of the funds again requires a finding that the transfer at issue was unauthorized and, thus, an erroneous transfer which precluded the set off under IND.CODE § 26–1–4.1–

303. However, as this court found above, HomeSide's payment order sent to Community Bank was not an unauthorized payment order. In addition, although it cannot be disputed that HomeSide made a grave error in sending the payment order to Community Bank, that error did not serve to make the transfer erroneous under § 4.1–303. Thus, the court will address only HomeSide's arguments that principles of law and equity supplemental to the U.C.C. preclude Community's set off in this case.

the particular provisions of the [U.C.C.], the principles of law and equity, including the law merchant and the law relative to ... mistake ... or other validating or invalidating cause, shall supplement the provisions of the [U.C.C.]." *See* IND.CODE § 26–1–1–103.[13] HomeSide asserts that the money mistakenly transferred to Community Bank remains the property of HomeSide since Community gave no consideration to HomeSide for that money. Further, HomeSide submits that the existence of a preexisting debt does not constitute consideration sufficient to provide a bank with the status of a bonafide holder for value. As a result, HomeSide argues that Community Bank holds the money "subject to prior equities," specifically HomeSide's ownership interest in the funds. In addition, HomeSide asserts that Community Bank would not be prejudiced by returning the funds because Community does not appear to have detrimentally changed its position as a result of the mistaken transfer. Rather, HomeSide submits that Community Bank has received a windfall as a result of the mistaken transfer. Therefore, HomeSide requests that this court look beyond the U.C.C. to principles of equity and state law to find that Community Bank's set off of the funds was improper.

The provisions of Article 4A of the U.C.C. appear to cover the scenario at issue. Section 26–1–4.1–502 of the Indiana Code provides in relevant part:

(c) If a beneficiary's bank has received a payment order for payment to the beneficiary's account in the bank, the following rules apply:

(1) The bank may credit the beneficiary's account. The amount credited may be set off against an obligation owed by the beneficiary to the bank or may be applied to satisfy creditor process served on the bank with respect to the account.

(2) The bank may credit the beneficiary's account and allow withdrawal of the amount credited unless creditor process with respect to the account is served at a time and in a manner affording the bank a reasonable opportunity to act to prevent withdrawal.

(3) If creditor process with respect to the beneficiary's account has been served and the bank has had a reasonable opportunity to act on it, the bank may not reject the payment order except for a reason unrelated to the service of process.

*See* IND.CODE § 26–1–4.1–502(c).

When the facts of this case are set against the backdrop of § 4.1–502(c), it appears that Community Bank's set off of the funds in Stevens Financial's account was proper. It cannot be disputed that Community Bank was the "beneficiary's bank," or that it received the payment order of $489,466.84 for payment to Stevens Financial's account. Thus, the rules of § 4.1–502(c) appear to apply to this case. The Official Comment to § 4.1–502 states: "Subsection (c)(1) allows the [beneficiary's] bank to credit the beneficiary's account with respect to a payment order and to accept the order by setting off the credit against an obligation owed the bank ..." *See* IND.CODE § 26–1–4.1–502, Official Comment 2.

In this case, on March 29, 1996, Community Bank accepted the payment order from HomeSide and credited Stevens Financial's account at Community. Then, on April 1, 1996, Community Bank set off the funds transferred and credited to Stevens Financial's account against the prior obligation Stevens owed Community on the 1995 Note. According to the record, since Stevens Financial owed Community Bank a prior obligation on the 1995 Note and because the payment order sent to Community was authorized and not an erroneous transfer, it is this court's opinion that Community Bank properly accepted the payment order under § 4.1–209(b)(1)(ii), and subsequently complied with § 4.1–502(c)(2) when it set off the funds from Stevens Financial's account.

HomeSide attempts to counter the set off by requesting this court to look to principles of equity and state law supplemental to the

13. *See* HomeSide's Response in Opposition to Community Bank's Motion for Summary Judg-
ment at 9.

U.C.C. However, as this court set forth above, this court *may* resort to principles of law or equity outside of Article 4A *only so long as these principles do not create rights, duties and liabilities inconsistent with those stated in Article 4A. See Centre–Point Merchant Bank Ltd.*, 913 F.Supp. at 206 (emphasis supplied). Further, Judge Preska of the Southern District of New York has held that "the exclusivity of Article 4–A is deliberately restricted to 'any situation covered by particular provisions of the Article,'" and "resort to judicial or other legal principles is prohibited if those principles conflict with any discrete components of the statutory scheme." *Sheerbonnet, Ltd. v. American Express Bank, Ltd.*, 905 F.Supp. 127, 131 (S.D.N.Y. 1995), *opinion corrected and superseded by* 951 F.Supp. 403, 407–08, 411–12 (S.D.N.Y. 1996).

In this case, it is readily apparent that § 4.1–502(c)(2) adequately covers Community Bank's set off of the funds from Stevens Financial's account. Thus, since the provisions of Article 4A expressly cover the circumstances that resulted in Community Bank's set off, this court finds that it cannot accept HomeSide's invitation to address legal or equitable principles outside of the U.C.C. that counsel against the express provisions of Article 4A. Accordingly, the court now finds that Community Bank's set off of the $125,274.59 was proper under § 4.1–502(c)(1) of the Indiana Uniform Commercial Code.

## VI. CONCLUSION

The circumstances of this case are unlike any case that has been reported under Article 4A of the U.C.C. It cannot be disputed that HomeSide made a severe mistake in transmitting the payment order to Community Bank. In any other situation, the mistaken transfer would have been received by a bank to which the beneficiary owed no prior debt, and the full amount of the transfer would likely have been returned to HomeSide. Of all the financial institutions that transmit and accept wire transfers daily, the percentages are quite small that any other bank would have had the opportunity to capitalize on HomeSide's error.[14] However, ironically, HomeSide mistakenly transferred the funds for the Yun mortgage to possibly the one bank that held a prior debt on Stevens Financial and could "capitalize" on the mistake under Article 4A.

In their treatise on the Uniform Commercial Code, James J. White and Robert S. Summers address a general rule that is very applicable to this case:

> As a general rule, an order is an order to the receiving bank, and if it follows the order, the bank is free and clear. If it receives an order that is erroneous because the sender intended something else, there will usually be no way for the receiving bank to know that someone not intended by the sender is receiving the money.

*See* 3 James J. White & Robert S. Summers, UNIFORM COMMERCIAL CODE § 24–2 (4th ed.1995). In this case, Community Bank received the authorized payment order sent by HomeSide and followed it by crediting Stevens Financial's account. At the time of the transfer, there was no way for Community Bank to know that the payment order was sent in error or that HomeSide was instructed to send the payment to a different warehouse lender. Alas, the payment was sent to Community Bank, clearly identifying Stevens Financial as the beneficiary and Community as the receiving bank. Thus, following White & Summers, because "an order is an order" and Community Bank properly followed the order without knowledge of any mistake, Community Bank is "free and clear" to collect on Stevens Financial's debt through the set off, even though full collection on the 1995 Note may have been difficult (or impossible) otherwise.

Accordingly, for the foregoing reasons, the court finds that the wire transfer sent by HomeSide to Community Bank for Stevens Financial's benefit on March 28, 1996, was an authorized payment order that was properly

---

**14.** As the Court of Appeals of the State of New York stated in *Banque Worms v. BankAmerica Int'l*, 77 N.Y.2d 362, 568 N.Y.S.2d 541, 570 N.E.2d 189 (1991), "[t]he popularity of wholesale wire transfers is evidenced by the fact that nearly $1 trillion in transactions occur each day, averaging $5 million per transfer and on peak days, this figure often approaches $2 trillion." 568 N.Y.S.2d at 546, 570 N.E.2d at 194.

accepted under Article 4A. In addition, the court finds that upon acceptance of the wire transfer, Community Bank was within its rights under Article 4A to set off the funds credited to Stevens Financial's account against Stevens' prior obligations on the 1995 Note. As a result, because there exist no genuine issues of material fact on the grounds presented in Community Bank's motion, this court now **GRANTS** Community Bank's motion for summary judgment on the intervenor plaintiff's complaint. The clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**