**Dennis BRENNAN, Plaintiff–Appellant,**

v.

**Richard M. DALEY, in his official capacity as Mayor of Chicago, a municipal corporation, Defendant–Appellee.**

**No. 89–3266.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 25, 1990.

Decided April 8, 1991.

---

John F. O'Meara and Cyriac D. Kappil, Chicago, Ill., for plaintiff-appellant.

Ruth M. Moscovitch, Kelly R. Welsh, Asst. Corp. counsel, Appeals Div., Jonathan P. Siner, Mardell Nereim, and Michelle Hutchinson, Office of the Corp. Counsel, Chicago, Ill., for defendant-appellee.

Before CUDAHY and FLAUM, Circuit Judges, and PELL, Senior Circuit Judge.

PELL, Senior Circuit Judge.

Dennis Brennan appeals from the district court's entry of summary judgment in favor of the defendant. Brennan alleged a violation of *Shakman v. Democratic Organization of Cook County*, 435 F.2d 267 (7th Cir.), *cert. denied*, 402 U.S. 909, 91 S.Ct. 1383, 28 L.Ed.2d 650 (1971), charging that the City improperly considered political affiliation in filling a vacancy for the position of hoisting engineer apprentice. The district court determined that Brennan did not timely file his *Shakman* complaint and entered judgment in favor of the City.

I.

On August 28, 1984, Brennan applied for a position of hoisting engineer apprentice in response to a notice that there was an available position. The notice indicated that the application deadline was August 31, 1984. At the time that Brennan filed his application, he did not receive notice of the *Shakman* procedures, although the *Shakman* decree requires that such notice be given.

On September 13, 1984, Brennan received a list of applicants for the hoisting engineer apprentice position in response to a Freedom of Information Act (FOIA) request. The list, which was current through September 5, 1984, contained the names of forty-seven applicants. On the same day that Brennan received the list of applicants, the City expanded the application deadline for the position to October 24, 1984.

Brennan filed a FOIA request to determine who ordered that the application period be extended. Personnel Director, Charles Pounian, denied the request by letter, however, he provided Brennan with a second list of applicants current through September 24, 1984. That list contained the names of 116 applicants. Brennan filed a second FOIA request in an effort to determine who had ordered that the application period be reopened. Paul Waterhouse, a Freedom of Information Officer, sent Brennan a letter stating that he could not determine who had ordered that the application period be reopened. During the time that Brennan filed his FOIA requests, he also made numerous inquiries about the status of his application and was informed that he would be contacted when the review of the applications was completed.

On October 3, 1985, unbeknownst to Brennan, Robert Terzich, Jr., the son of a state senator,[1] was permitted to file an application for the hoisting engineer apprentice position, nearly a full year after the extended deadline for applications. Terzich's application was accompanied with a statement from his doctor, which was later determined to be false, that Terzich had been under the doctor's care and had been too sick at the time of the application deadline to apply.

In either late December 1985 or early January 1986, Brennan received a list of hoisting engineers hired by the City, showing that Terzich was hired on December 16,

---

1. The state senator was a member of the Democratic Party. The political party affiliation, if any, of the son is not disclosed in the record.

1985. Within a month of his receipt of the hiring list, Brennan had his initial conversation with Robert Joyce, Deputy Commissioner of Personnel. Brennan asked Joyce whether any of the names on the hiring list were suspicious under *Shakman.* Joyce told Brennan that Terzich might be the son of a state senator, thus his hiring might be suspicious. When Brennan first became aware of Terzich's political connections, he also knew that Terzich's name did not appear on the list of applicants as of September 1984.

At either the initial meeting between Brennan and Joyce or a meeting two to three weeks later, Joyce told Brennan about the procedures for filing a *Shakman* complaint. In addition, Joyce apparently offered to copy the relevant information about the *Shakman* process for Brennan. Joyce did not, however, mention the 180–day statute of limitations applicable to such actions. It should also be noted, that although Joyce informed Brennan about the *Shakman* procedures, he also indicated that the mere fact that Terzich was a state senator's son was probably insufficient to support a *Shakman* violation. Thereafter, Brennan requested that Joyce provide him with a final eligibility list for the hoisting engineer's position. Although Brennan had received two other lists, Joyce denied the request on the basis of applicant privacy.

Apparently in response to Brennan's inquiries into the hiring of Terzich, Joyce initiated an investigation. Joyce determined that the medical excuse advanced by Terzich as the rationale for his application outside of the application period was inaccurate. As a result of that discovery, Terzich was terminated. Although there is some dispute as to the exact date upon which Brennan learned of Terzich's termination, it appears that as of the end of April 1986, Brennan knew that Terzich was fired because of a false statement in his application.

In July 1986, Brennan received a copy of Terzich's employment application. When Brennan received the application, he first determined that Terzich had filed his application almost a year after the deadline. Brennan filed a *Shakman* complaint in federal court on November 6, 1986. Judge Getzendanner dismissed the complaint without prejudice, noting that Brennan initially had to file the complaint with the City. After its investigation of Brennan's complaint, the City determined that there was no evidence of political consideration in Terzich's hiring. Thereafter, Brennan reinstated his federal complaint.

The City filed a Motion for Summary Judgment in the district court alleging that the complaint was not timely filed. The district court held a hearing on the statute of limitations issue. The court concluded that as of April 1986, Brennan knew of sufficient facts to support a *Shakman* charge. Therefore, the statute of limitations began to run as of April 1986 and the 180–day limitation period expired on October 27, 1986. As such, the district court found that Brennan's filing of November 6, 1986 was untimely.

## II.

We review the district court's granting of summary judgment in this case *de novo,* drawing all reasonable inferences from the record in the light most favorable to the nonmoving party to determine whether there are any genuine issues of material fact remaining for trial. " 'If there are such issues, summary judgment may not be granted. In the absence of any such issues, we determine whether the moving party is entitled to judgment as a matter of law.' " *Rizzo v. Caterpillar, Inc.,* 914 F.2d 1003, 1006 (7th Cir.1990) (quoting *Thomas v. United Parcel Service, Inc.,* 890 F.2d 909, 914 (7th Cir.1989)).

In *Smith v. City of Chicago,* 769 F.2d 408, 413 (7th Cir.1985), this court held that the Title VII 180–day statute of limitations is applicable in *Shakman* actions. In addition, the *Smith* court adopted the balance of the Title VII timing rules "including those defining the accrual of the claim and tolling of the period of limitations." *Id.* Thus, we must evaluate Brennan's claim under the timing rules of Title VII to determine whether the suit was time-barred.

It is well-settled that the limitations period for Title VII claims begins running on the date of the alleged unlawful practice. *Nazaire v. Trans World Airlines, Inc.*, 807 F.2d 1372, 1376 (7th Cir.1986), *cert. denied*, 481 U.S. 1039, 107 S.Ct. 1979, 95 L.Ed.2d 819 (1987). The limitations period is, however, subject to equitable tolling. *Vaught v. R.R. Donnelley & Sons, Co.*, 745 F.2d 407, 410 (7th Cir.1984). That is, the limitations period is tolled until the " 'facts that would support a charge of discrimination ... were apparent or should have been apparent to a person with a reasonably prudent regard for his rights similarly situated to the plaintiff.' " *Id.* at 410–11 (quoting *Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924, 931 (5th Cir.1975)); *see also Wislocki–Goin v. Mears*, 831 F.2d 1374, 1378 (7th Cir.1987), *cert. denied*, 485 U.S. 936, 108 S.Ct. 1113, 99 L.Ed.2d 274 (1988) (The 180–day period of limitations begins to run when an employee either knows or should know that an unlawful employment practice has been committed.).

The question in this case thus becomes one of determining when Brennan had sufficient information to be held to have sufficient knowledge of the basis for a *Shakman* complaint, triggering the running of the limitations period. The City argues, and the district court found, that as of April 1986 Brennan knew or should have known that he had a claim under *Shakman*, because he knew that Terzich had received the position for which Brennan had applied, that Terzich's name did not appear on the partial list of applicants for the position, that the City would not give him a complete list of applicants, and that Terzich had been fired. Brennan maintains that it was only when he received Terzich's application in July 1986 and discovered that Terzich was permitted to apply nearly one year after the application deadline that Brennan had sufficient factual basis for the filing of a *Shakman* complaint. Brennan maintains that without that final piece of information, his charge that Terzich's hiring was a result of political patronage was based solely on suspicion and speculation.

We find Brennan's argument persuasive. We do not believe that the facts known to Brennan as of April 1986 were so indicative of wrongful activity that a reasonably prudent person should have known that political considerations factored into Terzich's employment. While the fact that Terzich was the son of a state senator is significant, it alone does not create a good-faith basis for the filing of a *Shakman* charge. The significance of Terzich's lineage is limited because fairness dictates that qualified applicants with political affiliations should not be excluded from City employment, merely because of those connections.

In addition, Terzich's termination seems to be of little importance to the issue of when Brennan should have known of the factual basis for a *Shakman* claim. Initially, we note that it is unclear how Terzich's termination is relevant to his hiring. Specifically, it is difficult to determine how knowledge that Terzich was terminated for making a misrepresentation on his employment application demonstrates that patronage was a factor in Terzich's employment. Instead of creating an inference that the termination was premised upon the City's discovery that political affiliation had been considered improperly in Terzich's hiring, we believe that by informing Brennan that Terzich was fired because of a misrepresentation on his application, the City directed attention away from the *Shakman* allegations. To the extent that an inference supporting a *Shakman* violation could be created by Terzich's termination, the inference is weakened by the City's proffer of a distinct reason for his termination. Terzich's termination following an investigation prompted by Brennan's inquiry into Terzich's employment might indicate that the City found evidence of a *Shakman* violation in its investigation. The effect of that inference for purposes of determining whether there was sufficient factual support to file a *Shakman* charge is diminished, however, by the City's advancement of an explanation for the termination unrelated to political affiliation.

Finally, we do not find that the failure of the City to provide a complete list of appli-

cants established a sufficient factual basis for the filing of a *Shakman* complaint. While the City's refusal to provide a complete list to Brennan despite its provision of two partial applicant lists is suspicious, we do not think that the City's refusal to provide the list triggered the running of the limitations period. There are numerous reasons why a FOIA request might prove to be unsuccessful, not the least of which is human error. We are, therefore, reluctant to find that an unsuccessful request for information, considered either alone or in conjunction with the other facts known to Brennan as of April 1986, was sufficient to place him on notice of his *Shakman* claim. It is clear to us that it was not until the time that Brennan learned that Terzich was permitted to apply for the hoisting engineering position well outside the application period that the facts supporting the *Shakman* violation were or should have been apparent to a reasonably prudent person.

The conclusion that the statute of limitations did not begin to run until Brennan learned of Terzich's late application, is strengthened in this case by the fact that the lateness of the application was a fact "peculiarly within the knowledge of the [City]." *Wolfolk v. Rivera*, 729 F.2d 1114, 1117 (1984). The record reflects that Brennan made numerous attempts to obtain information to determine whether Terzich applied within the period set aside for applications by the City. Those attempts were thwarted by the City's refusal to provide a final list of applicants. That activity on the part of the City had the effect of keeping a key fact supporting the *Shakman* charge from Brennan, thus, equitable considerations require that the limitations period be tolled in this case until Brennan obtained that information. What is important for our purposes is that once Brennan learned of the late application, he acted promptly, filing his *Shakman* claim within the 180–day limitation period. As such, we find that the district court improperly entered summary judgment in favor of the City on the timeliness issue. We also note that a sound policy reason exists for requiring that a *Shakman* filing be premised on a factual basis more revealing than the conjectural information known to Brennan in April 1986. To trigger the running of the statute of limitations on facts of this calibre could not but help to create a time standard for filing which would result in an increase of *Shakman* filings, at least some of which would be unnecessary because based on suspicion rather than facts.

Finally, we observe that in *Smith* this court stated that the district court might "find it appropriate to require the City to amend its posted notices of employees' rights under the *Shakman* decree to include a warning about the period of limitations." 769 F.2d at 413. We take this opportunity to reassert our suggestion that the district court consider whether such a modification of the *Shakman* decree would be appropriate. The limitations period in this type of case is relatively short, therefore, such notification would seem to serve a valuable purpose consistent with the remedial nature of the *Shakman* decree.

### III.

For all of the foregoing reasons, the decision of the district court entering judgment in favor of the City is hereby RE- VERSED and the case is REMANDED to the district court for further proceedings consistent with this opinion.