**ZIMMER, INC., Plaintiff,**

v.

**HOWMEDICA OSTEONICS CORP., Defendant.**

**No. 3:02 CV 0425AS.**

United States District Court,
N.D. Indiana,
South Bend Division.

April 3, 2003.

---

David P. Irmscher and Abigail M. Butler. of Baker & Daniels, Fort Wayne, IN, for Plaintiff.

Robert J. Palmer, May Oberfell and Lorber, South Bend, IN, Gregory J. Vogler and Eligio C. Pimentel of McAndrews, Held & Malloy, Ltd., Chicago, IL, for Defendant.

### *MEMORANDUM AND ORDER*

ALLEN SHARP, District Judge.

Plaintiff, ZIMMER, INC. ("ZIMMER"), filed this lawsuit seeking a declaratory judgment that two products manufactured and sold by Defendant, HOWMEDICA OSTEONICS CORP. ("HOWMEDICA"),

infringe on a patent held by ZIMMER. HOWMEDICA filed a Motion for Summary Judgment of *Noninfringement* and, in the alternative, Motion for Summary Judgment of Patent Validity. Subsequently, ZIMMER filed a Motion for Summary Judgment of *Infringement.* Only if no reasonable jury could find for ZIMMER should HOWMEDICA's Motion be granted, requiring that ZIMMER's motion for summary judgment be denied. This Court heard the parties' oral arguments on the motions for summary judgment in South Bend on February 4, 2003.

### Jurisdiction

This Court's jurisdiction is based upon 28 U.S.C. § 1338(a). This Court's venue is based on 28 U.S.C. § 1391(b) & (c).

### Facts

ZIMMER is a Delaware corporation with a principle place of business in indiana. HOWMEDICA, a New Jersey corporation and a wholly-owned subsidiary of Stryker Corporation, does business in Indiana. Both parties design, manufacture, and sell various medical supplies, including prosthetic implants.

It is well-established that, during its summary judgment analysis, the Court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Smith v. Fruin,* 28 F.3d 646, 650 (7th Cir.1994), *cert. denied,* 513 U.S. 1083, 115 S.Ct. 735, 130 L.Ed.2d 638 (1995); *Brennan v. Daley,* 929 F.2d 346, 348 (7th Cir.1991), *reh'g denied,* 1993 WL 518446. As this Court is faced with cross-motions for summary judgment, the Court will construe the facts and draw its inferences regarding *infringement* in the light most favorable to HOWMEDICA, and will construe the facts and draw its inferences regarding *noninfringement* in the light most favorable to ZIMMER.

ZIMMER holds U.S. Patent No. 5,290,-313 (hereinafter termed the '313 patent), which describes a modular implant system that replaces human joints and bones. It is comprised of *two* modular components, a base and stem, that are joined together inside the body when the one-piece base is mounted onto the one-piece stem using an extending pin. The '313 patent requires a two-piece modular system contains a modular stem which is mounted into a modular base.

The '313 patent was issued with seventeen claims. Claim 1[1] is an independent claim, Claims 2–17 are dependent upon Claim 1. ZIMMER's Statement of Undisputed Material Facts recites the Claims of the '313 Patent that are material to the dispute between the parties. It may be helpful to recite these Claims here. Claim 1 describes the base, stem and separate mounting means for both, with a stem extension and elongated stem portion having two central longitudinal axes which are "substantially parallel" but are spaced apart to provide an offset between the two axes. Claim 2 requires that the stem mounting means be radially adjustable in cooperation with the base mounting means to permit the second axis of the stem to be oriented in a plurality of radial orientations relative to the first axis. Claim 3

---

**1.** Claim 1 reads as follows: 1. A modular prosthesis system comprising a prosthetic base portion having a surface for positioning adjacent to a corresponding bone, the base portion having a base mounting means thereon, and a stem extension for insertion into a cavity in a bone, the stem extension having a stem mounting means for mounting the stem extension into the base mounting means, and the stem extension further having an elongated stem portion connected to the stem mounting means by a connection portion, and wherein the stem mounting means has a first central longitudinal axis and the elongated stem portion has a second central longitudinal axis substantially parallel to the first axis, but which is spaced apart therefrom to provide an offset there between.

requires that the stem extension be "releasably fixed", ZIMMER argues that "releasably" means that the "orientation of the stem extension relative to the base portion is releasable to allow the user to select the desired orientation of the base portion with respect to the stem extension." (ZIMMER's Statement of Undisputed Material Facts, p. 5, no. 21.) Claim 4 requires that the connecting portion include a lower transition surface that crosses the first axis. Claim 6 requires that this lower transition surface cross the first axis at an angle between 5 and 90 degrees. Claim 8 requires that the base mounting means include a recess therein and that the stem mounting means include an extending pin for mating with the recess. Claim 13 requires that the system be comprised of a plurality of base and stem extensions, each of varying sizes, but designed so that any base could be attached to any stem. Claim 14 requires that the stem extensions be sized to provide a plurality of offsets by varying the distance between the first and second axes. Claim 17 requires that the user be able to select a position of the stem mounting means in a plurality of orientations relative to the base mounting means so that the second longitudinal axis may be oriented in a plurality of positions with respect to the first axis and the base portion. ZIMMER argues that HOWMEDICA's accused products contain every limit of Claim 1 of the '313 patent.

HOWMEDICA manufactures, among other things, the Duracon Total Stabilizer ("Duracon") and the Scorpio TS ("Scorpio") as a licensed user of U.S. Patent No, 5,782,920 (the " '920 patent"). It must be noted that the '920 patent was issued by the United States Patent and Trademark Office ("U.S.P.T.O.") *after* the '313 was issued. The '920 patent requires a *four*-piece system that includes a tray element, and offside adapter, a locking ring, and a stem extension and which are connected by threaded screw connections. HOWMEDICA's products, being licensed under the '920 patent, must consist of those components. HOWMEDCIA's Memorandum Supporting Summary Judgment, at 4–5. The '920 patent describes a single-axis stem extension and separate offset adaptor, like those contained in HOWMEDICA's accused products. HOWMEDICA denies that the Duracon and Scorpio infringe on any of the claims of the '313 patent.

This case calls for an examination of three patents: a Lazarri patent, the '313, and the '920 patent. This comparison is important because Lazarri was issued prior to the '313 patent and, as prior art, if the '313 patent's claims encompassed Lazarri's claims, the U.S.P.T.O. presumably would not have issued the'313 patent. In addition, in order to obtain the '313 patent, ZIMMER made admissions before the U.S.P.T.O. that distinguished the '313 from the Lazarri patent. These admissions are relevant to the present dispute. Similarly, '920 was issued by the U.S.P.T.O. after the '313. If the '920's patent's claims infringed the claims of '313, with '313 being prior art, then the U.S.P.T.O. presumably would not have issued the'920 patent.

Much of the discussion in the parties' memoranda supporting and opposing summary judgment address three key differences between the '313 patent and the accused products. These are summarized as follows:

**Modular stem extension**: The '313 patent requires two modular [2] components; a

---

2. HOWMEDICA defines "modular" as requiring standardized units. (HOWMEDICA's Memorandum Supporting Summary Judgment, p. 8). ZIMMER offers a similar definition, as demonstrated in depth in ZIMMER's Memoranda Supporting Its Motion For Summary Judgment, p. 8.

base and a stem extension. The '313 patent requires that the stem extension be comprised of a single part, with two offset longitudinal axes that are available in varying sizes, so that any of its stem extensions can be attached to any of its base portions. (ZIMMER Memorandum Supporting Summary Judgment, Ex. 1 at 4:67–5:3; HOWMEDICA's Memorandum in Opposition to Summary Judgment, p. 22). The axes allow for radial adjustment to achieve a proper fit each individual patient. (*Id.*) Conversely, HOWMEDICA's products do not include the same or similar stem extension with a means of mounting them into bases. HOWMEDICA's products have only one longitudinal axis of orientation. (HOWMEDICA's Memorandum Supporting Its Motion for Summary Judgment, pp. 12–13). HOWMEDICA's products consist of offset adaptor components and stem components, each of which are sold separately and are combined by a threaded screw connection. The two components then are affixed to each other permanently through the use of a third piece, a locking ring, and then are implanted. (HOWMEDICA's Memorandum in Opposition to ZIMMER's Motion for Summary Judgment at 23–24, HOWMEDICA's Memorandum Supporting Summary Judgment, p. 13).

**Stem extension component:**The '313 patent requires that there be a stem extension component that contains two offset, longitudinal axes. This is an important element because ZIMMER emphasized this distinction in its arguments before the U.S.P.T.O. In its efforts to obtain the '313 patent. ZIMMER's argument in this regard consisted of a compare/contrast argument in relation to the Lazarri patent. The '313 patent required that both axes be: (1) located in the stem extension com-

ponent; (2) substantially parallel; (3) spaced apart from each other to provide an offset. (ZIMMER Memoranda, Ex. 3 at HM00068 ('313 file history); HOWMEDICA's Memorandum in Opposition to ZIMMER's Motion for Summary Judgment at 16). This language indicates that the '313 patent have be a one-part stem extension component. On the other hand, HOWMEDICA's products require two parts: an elongated stem extension *and* an offset adaptor. (HOWMEDICA's Memorandum in Opposition to ZIMMER's Motion for Summary Judgment at 20). The modular stem extension present in HOWMEDICA's products are not the same as those described in the claims of the '313 patent. Moreover, the '313 patent requires the ability to be radially adjusted by means of the stem extension component. HOWMEDICA's products cannot be adjusted because they require the use of permanent screw connections. (HOWMEDICA's Memorandum in Opposition to ZIMMER's Motion for Summary Judgment at 20).

**Connections**: The '313's stem extension is mounted to the base through one of two stem mounting means, either a conical or tapered extending pin on the stem extension that mates with a compatible recess or pin that is located on the base.[3] (HOWMEDICA's Memorandum Supporting Summary Judgment at 12.) When using a product licensed under the '313 patent, a surgeon can select the orientation of the stem extension when it is implanted in a bone, but then can adjust the base plate or replace a selected base plate with a base plate of a different size so that the prosthetic system fits the patient properly. (HOWMEDICA's Memorandum In Support Of Summary Judgment, p. 15). Con-

---

**3.** The tapered/conical pin and recess arrangement disclosed in the '313 patent is termed a Morse taper connection. (Ex. B. Zarnowski Declaration, HOWMEDICA's Memorandum Supporting Its Motion For Summary Judgment, p. 14, FN 6).

versely, the '920 patent calls for a stem extension that is affixed to an offset adapter element by a threaded screw connection. (HOWMEDICA's Memorandum Supporting Summary Judgment at 13.) Using one of HOWMEDECIA's systems, a surgeon must selected the orientation of the stem extension and screw the base plate Into place using threaded screws that achieve a "lock", (*Id.* at 15). This means of attachment does not allow for adjustments after engaging the threaded screws. (*Id.* at 16).

The Court must determine whether the threaded screw connections used in HOWMEDICA's products are the same or equivalent to the '313 patent's tapered/conical pin and recess arrangements. HOWMEDICA's products contain a female thread on the base plate and a male thread on the offset adapter. (HOWMEDICA's Memorandum Supporting Summary Judgment at 14). The male thread contains a locking ring which is tightened against the base plate and locks the base plate and adapter together so that they cannot be adjusted. The stem extension is threaded into the female thread at the bottom of the offset adaptor. (*Id.*) The base plate is locked into place with the stem extension via the male/female screw threads. (*Id.* at 15). The orientation of the prosthetic system must be determined *before* the threaded screws affix the pieces of the prosthetic system together because the attachment is permanent. The '313 patent requires that its stem extension be inserted into the bone canal with the base portion attached to the stem extension. The orientation of this prosthetic system can be adjusted even after the base and stem extension are affixed by sliding on and off the conical pin and process arrangement. (HOWMEDICA's Memorandum Supporting Summary Judgment at 15–16).

## STANDARD OF REVIEW: SUMMARY JUDGMENT

According to Rule 56, Fed.R.Civ.P., at the summary judgment stage, the Court addresses the pleadings, discovery, and affidavits to see whether the movant is entitled to summary judgment as a matter of law.

Summary Judgment in favor of those accused of infringement is appropriate where there is no genuine issue of material fact, the trial court has properly construed the claims, and a finding of infringement would be impossible. *Porter v. Farmers Supply Service,* 790 F.2d 882, 884 (Fed. Cir.1986) (affirming summary judgment of noninfringement); *Brenner v. United States,* 773 F.2d 306, 307 (Fed.Cir.1985). Summary judgment is appropriate in patent cases where no genuine issue of material fact is present and the movant is entitled to judgment as a matter of law. *Brenner v. United States,* 773 F.2d 306. 307 (Fed.Cir.1985). Claim interpretation is a matter of law, and a dispute respecting that legal issue does not preclude summary judgment. *Molinaro v. Fannon/Courier Corp.,* 745 F.2d 651 (Fed.Cir. 1984). Claim construction is a matter of law, exclusively within the province of the court. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed.Cir. 1995), aff'd, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). Disputes about claim construction do not preclude summary judgment. *Molinaro,* 745 F.2d at 654.

Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56; *Russo v. Health, Welfare & Pension Fund, Local 705,* 984 F.2d 762

(7th Cir.1993). A thorough discussion of Rule 56 can be found in a trilogy of cases decided in 1986 by the Supreme Court of the United States.[4] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *Celotex* addressed the initial burdens of the parties under Rule 56, and *Anderson* addressed the standards under which the record is to be analyzed within the structure of Rule 56.

The initial burden is on the moving party to demonstrate, "with or without supporting affidavits," the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56). A question of material fact is a question which will be outcome determinative of an issue in the case. The Supreme Court has instructed that the facts material in a specific case shall be determined by the substantive law controlling the given case or issue. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine [material] issue for trial.' " *Id.* The nonmoving party cannot rest on its pleadings. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920–21 (7th Cir.1994); *Hughes v. Joliet Correctional Ctr.*, 931 F.2d 425, 428 (7th Cir.1991), nor may that party rely upon conclusory allegations in affidavits. *Cusson–Cobb v. O'Lessker*, 953 F.2d 1079, 1081 (7th Cir.1992).

During its summary judgment analysis, the Court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *Smith v. Fruin*, 28 F.3d 646, 650 (7th Cir.1994), *cert. denied.* 513 U.S. 1083, 115 S.Ct. 735, 130 L.Ed.2d 638 (1995); *Brennan*, 929 F.2d at 348 (7th Cir.1991); *King v. Preferred Technical Group*, 166 F.3d 887, 890 (7th Cir.1999)(*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). Furthermore, it is required to analyze summary judgment motions under the standard of proof relevant to the case or issue. *Anderson*, 477 U.S. at 252–55, 106 S.Ct. 2505.

Summary judgment is not a disfavored procedural shortcut, but rather is intended to avoid a useless trial, and is appropriate where it is quite clear what the truth is, *Babrocky v. Jewel Food Co. & Retail Meatcutters*, 773 F.2d 857, 861 (7th Cir. 1985). Applying the above standards, this Court addresses the cross-motion for summary judgment.

### ANALYSIS

Determining patent infringement requires determining whether an individual without authority makes, uses, offers to sell, sells, or imports the patented invention within the United States, its territories, or its possessions, during the term of the patent, 35 U.S.C. § 271(a). Patent infringement may be established through

---

4. The 1986 Supreme Court trilogy was later reexamined in *Eastman Kodak v. Image Technical Servs.*, 504 U.S. 451, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). a case born in the context of antitrust law. The most that can be said for *Eastman Kodak*, however, is that it did not tinker with *Celotex* and *Anderson*, and possibly involves an attempt to clarify *Matsushita*. This view is well-supported by an in-depth academic analysis in Schwarzer, Hirsch, and Barrans, *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441 (1992).

literal infringement analysis or through the doctrine of equivalents. *Mas–Hamilton Group v. LaGard Inc.*, 156 F.3d 1206, 1211 (Fed.Cir.1998); *Ethicon Endo–Surgery Inc. v. United States Surgical Corp.*, 149 F.3d 1309, 1315–20 (Fed.Cir.1998).

*Literal Infringement*

 Infringement generally exists if any one of a patent's claims covers the alleged infringer's product or process. *Markman v. Westview Instruments Inc.*, 517 U.S. 370, 374, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). Whether a patent claim covers an alleged infringer's product or process requires two steps: Claim interpretation, which is a matter of law, then whether the alleged product or process actually infringes the claims, which is a question of fact. *Markman* at 374, 116 S.Ct. 1384. For literal infringement, *every* limit set forth in the claim must be found in an accused product, *exactly*. *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, (Fed.Cir.1995), cert. denied, 516 U.S. 987, 116 S.Ct. 515, 133 L.Ed.2d 424. There can be no infringement if any claim element is missing from an accused product. *Southwall Techs.*, 54 F.3d at 1575. There is literal infringement if each properly construed claim element "reads on" the accused product. *Jeneric/Pentron, Inc. v. Dillon Co.*, 205 F.3d 1377, 1382 (Fed.Cir.2000).

This case turns on the interpretation of claim elements, which is a matter of law and does not preclude summary judgment. *Molinaro,* 745 F.2d at 655. Claim construction and interpretation is within the Court's exclusive province. *Markman,* 52 F.3d at 979. Claim construction begins with the words of the claim. *Prima Tek II, L.L.C. v. Polypap, S.A.R.L.,* 318 F.3d 1143, 1148 (Fed.Cir.2003).

The claims at issue are recited in the "Facts" portion of this Opinion, *supra* and were addressed at length in the parties' memoranda. The Court interprets these claims as follows: The '313 patent describe a prosthetic system with two primary components: a base and a stem extension. The base and stem each have mounting means that are designed to fit together in a variety of positions and orientations. This is important because the system can be adjusted radially. mid-surgery, to achieve the proper fit for each individual patient. The desired fit is achieved through the use of two longitudinal axes on the elongated stem portion of the stem extension. The axes are parallel but spaced apart to provide an offset for stability inside the bone. The base and stem are connected by a pin and recess. Moreover, the stem extension is "releaseably fixed" to the base, which permits the system to be further adjusted during surgery to achieve a proper fit for each patient.

HOWMEDICA argues that there is no literal infringement of any claim of the '313 patent. HOWMEDICA relies on the specifications and file history of the '313 patent, which require that '313 products have a "stem mounting means" that mounts a stem extension to the "base mounting means" such that the stem is radially adjustable, where the "stem extension" is a "modular" component that is available in a plurality of sizes and offsets, to support its position. (HOWMEDICA's Opposition to ZIMMER's Motion for Summary Judgment at 4).

HOWMEDICA's products rely on an offset adaptor component that is attached to variously-sized stem extensions to achieved the desired fit for individual patients. (Pimental Declaration, Ex. H (Zemowski Declaration, pp. 2–3, ¶ 7)). Pursuant to HOWMEDICA's surgical protocol, the offset adaptor and stem extension are assembled and implanted into a patient, (*Id.*, ZIMMER's Opposition, Ex. 8). Prior to being implanted, the offset adaptor and stem extension are *perma-*

*nently* attached to each other via use of a torque wrench. (*Id.*)

The parties' memoranda explain that HOWMEDICA's products do not literally infringe the claims of the '313 patent. The '313 patent calls for a *connection portion* that is part of the stem extension component, that connects the elongated stem to the stem mounting means of the stem extension component. (ZIMMER Memoranda Supporting Summary Judgment, Ex. 1 at Fig. 2 (the '313 patent); HOWMEDICA's Memorandum in Opposition to Zimmer's Motion for Summary Judgment at 22). HOWMEDICA's products lack an identical elongated stem extension. (HOWMEDICA's Memorandum in Opposition to ZIMMER's Motion for Summary Judgment, FN 10).

HOWMEDICA's products utilize a *permanent,* threaded screw connection and interference fit to attach the base and stem extension that does not allow for radial adjustment. (HOWMEDICA's Memorandum Opposing ZIMMER's Motion for Summary Judgment, pp. 13 & 20). A key feature of the '313 patent is the movable base that is radially *adjustable* even after it is attached to the stem extension. (HOWMEDICA's Opposition to ZIMMER's Motion For Summary Judgment. p. 1). Even viewed in the light most favorable to ZIMMER, the claims of the '313 patent are not literally infringed by HOWMEDICA's products.

*Doctrine of equivalents*

■ This theory allows the court to find infringement when an accused product or process is the substantial equivalent of the patented invention. *Warner–Jenkinson Co. v. Hilton Davis Chemical Co.,* 520 U.S. 17, 34, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). Equivalence is a question of fact to be determined by a trier of fact and is determined at the time of infringement. *Graver Tank,* 339 U.S. at 609, 70 S.Ct. 854; *Warner–Jenkinson Co.,* 520 U.S. at 37, 117 S.Ct. 1040. The essential inquiry is whether the accused product or process contains elements identical or equivalent to each element of the claimed invention. *Id.* at 40, 117 S.Ct. 1040. The test is whether the differences between the two are insubstantial to one of ordinary skill in the art. *KCJ Corp. v. Kinetic Concepts, Inc.,* 223 F.3d 1351, 1359 (Fed.Cir.2000). An equivalent must be found for every limitation of the claim somewhere in the accused device, but not necessarily in the corresponding component. *Corning Glass Works v. Sumitomo Electric U.S.A., Inc.,* 868 F.2d 1251, 1259 (Fed.Cir.1989). Under this theory, ZIMMER must prove that a patent claim is embodied in an accused product. *Graver Tank & Mfg. Co., Inc. v. Linde Air Products Co.,* 339 U.S. 605, 608–09, 70 S.Ct. 854, 94 L.Ed. 1097 (1950), Under this doctrine, infringement may be found if the accused device performs substantially the same overall function or work, in substantially the same way, to obtain substantially the same result. 35 U.S.C. § 112, ¶ 6, *Atlas Powder Co. v. E.I. du Pont De Nemours & Co.,* 750 F.2d 1569 (Fed.Cir.1984). The doctrine will impute infringement to an accused device which embodies the patent claim with only insubstantial changes. *Graver Tank,* 339 U.S. at 607, 70 S.Ct. 854.

■ Prosecution history estoppel limits the application of the doctrine of equivalents by excluding from the range of equivalents subject matter surrendered during prosecution of the application for the patent. *Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1460 (Fed.Cir.1998) (en banc). In the parties' memoranda favoring and opposing summary judgment, reference is made to a Lazarri patent which was issued prior to the '313 patent. In patent cases, prior patents represent prior art. The Lazarri patent, according to ZIMMER's representations before the U.S.P.T.O., did not disclose two longitudi-

nal axes on the same component. (ZIMMER's Memorandum Opposing Summary Judgment, Ex. 3 at HM00068 ('313 file history), HOWMEDICA's Opposition to Summary Judgment at 15). ZIMMER emphasized this distinction in prosecuting the '313 patent. (*Id.*) HOWMEDICA correctly points out that ZIMMER must now live with the statements it made to the U.S.P.T.O. during its application for the '313 patent, as claim interpretation is limited to exclude interpretations disclaimed during patent prosecution. *Southwall Techs.*, 54 F.3d at 1576. According to the '313 file history, ZIMMER told the U.S.P.T.O. that Lazarri did not contain two longitudinal exes on the same component. The Lazarri patent requires, on the other hand, *one axis* in the system's base mounting means and one In the stem extension. The Lazarri patent did not require that there be two longitudinal axes on the same component, as is required by the '313 patent. (HOWMEDICA's Opposition to ZIMMER's Motion for summary judgment at 16). These distinctions that ZIMMER made before the U.S.P.T.O. must be considered by the Court in construing ZIMMER's claims in this case, it is error for this Court not to consider such statements. *Southwall Techs.*, 54 F.3d at 1576; *Guttman, Inc. v. Kopykake Enterprises, Inc.*, 302 F.3d 1352, 1361 (Fed.Cir. 2002). Therefore, the Court will use the statements ZIMMER made before the U.S. P.T.O. in interpreting the claims. Therefore, for infringement to be found, HOWMEDICA's products must contain two longitudinal axes on the same component, as is required by the '313 patent, or the same structure with only insubstantial changes.

HOWMEDICA's products lack the modular stem extension, a standardized unit, that can be mounted directly onto a base, as required by the '313 patent. (HOWMEDICA's Memorandum Supporting Summary Judgment, p. 12).

HOWMEDICA's products lack the two longitudinal axes as described and required by the '313 patent claims. (*Id.*) The one-piece stem extension of the '313 patent is substantially different, for purposes of this litigation from the three-piece stem extension, locking ring and offset adaptor used by HOWMEDICA. (*Id.* at 13). The differences in the structural characteristics of the parties' devices are substantial, as are the two longitudinal axes on the same component which are a requirement of the '313 patent but are absent from HOWMEDICA's products.

The '313 patent calls for a stem extension, which ZIMMER argues is evidence of HOWMEDICA's infringement. (ZIMMER's Statement of Undisputed Material Facts, p. 4) But the '313 patent calls for a modular stem extension. HOWMEDICA's stem extension is not modular. Instead, HOWMEDICA's products require the assembly of three separate pieces (offset adaptor, locking ring, and stem extension) for the stem extension portion to be operable. (HOWMEDICA's Memorandum Supporting Summary Judgment, p. 13). 83).

Using the *Atlas Powder* standard, no infringement is found. While each of the systems perform the same function to obtain substantially the same results, the way in which the work is done is different. Again, the Court focuses on the nature of the '313 patent: The language In the claims requires that a surgeon be able to separate the base and stem after first affixing them with the Morse taper, in case a different component is required to achieve the proper fit for a patient receiving the '313 implant. Conversely, the HOWMEDICA products do not allow for adjustment once the base and stem have been attached. In addition, the '313 patent does not use the offset adaptor with the stem extension that is used by the HOWMEDICA products to achieve the

proper fit and orientation for each patient. In short, while the '313 patent and the HOWMEDICA products provide the same outcome (stabilizing joints in the human body), there is a substantial difference between the products in the way this end is accomplished.

■ Another key difference between the parties' products is the nature of the connection. Although the '313 patent calls for a Morse taper connection to connect the modular units of the system, ZIMMER's Motion for Summary Judgment also alleges that the recess and pin on the '313 patent could be affixed by the use of screws and/or an interference fit. (P. 13–14). ZIMMER relies on this argument as another example of HOWMEDICA's alleged infringement. However, this argument is discounted because the '313 patent does not disclose the use of an interference fit. (HOWMEDICA's Reply To ZIMMER's Opposition to Summary Judgment, p. 7). HOWMEDICA correctly points out that ZIMMER's argument in this regard excludes the preferred embodiment of the '313 patent, which requires a releasable fit and radial adjustments. (*Id.*) it is incumbent on this Court to follow the admonition of the Federal Circuit on this point: "It is elementary that a claim construction that excludes the preferred embodiment is rarely, if ever correct and would require highly persuasive evidentiary support." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583(Fed.Cir.1996) (internal quotation marks omitted). ZIMMER has not provided "highly persuasive evidentiary support" to explain why it has abandoned this key aspect of the '313 patent's claims. Moreover, this litigation is not the proper arena for ZIMMER to compromise the arguments or statements ZIMMER made before the U.S.P.T.O. whom it was prosecuting its patent. *Hughes Aircraft v. U.S.*, 717 F.2d 1351, 1362 (Fed.Cir.1983).

The parties' products are comprised of different structures and function differently. The Court finds that these differences are not "insubstantial" in the sense required by the doctrine of equivalents. Infringement under the literal infringement test or the doctrine of equivalents has not been established.

### CONCLUSION

In light of the foregoing, it is appropriate to grant summary judgment of *noninfringement* to HOWMEDICA and to deny ZIMMER's motion for summary judgment of *infringement*. Each party will bear its own costs. **IT IS SO ORDERED.**